Our first case today is Zenith Insurance against Martin P. Newell, MPN, Inc. Mr. Schiller. Good morning, Your Honors. Ronald Schiller for Zenith Insurance. And with the Court's permission, I'd like to reserve three minutes for Ronald. Granted. Thank you. Your Honor, I represent Zenith Insurance. I'm going to be talking about a little bit the District Court's decision, but to be clear, as I know the Court knows, and as Olitski itself states, this is a contract interpretation of an insurance policy issue. Therefore, it's plenary review, and the District Court's decision is entitled to no deference. That's well-known Supreme Court law, and the Olitski decision, which we'll be talking about, says that expressly. You're going to start with jurisdiction, right? Certainly, Your Honor. This case on jurisdiction relies on the Third Circuit's law, Ramara in particular, the 2016 Third Circuit decision that says the way the District Court orders that we have an obligation to provide a defense, future defense. It's treated as injunctive, subject to contempt for violation. We did ask the District Court for permission to stay it or post a bond. That was denied. It was denied, to be clear, because the Third Circuit was considering the jurisdictional question and the court's office had raised it. So I don't think it was denied necessarily on the merits, but the District Court never did grant our request under Third Circuit law. Therefore, because this was a future, and it's the first paragraph in Judge Beadlestone's order, a future-looking order that we provided defense, and when you add under Jerry Sports that, barring the argument that the only reason we're providing the defense is that we were ordered to do so, in other words, barring the argument that the order makes a difference, we don't get that money back. So it's injunctive and it's punitive, and as a result, under Ramara, it's appealable. How is this any more injunctive than a declaration that you have a duty to defend? This was an order ordering us to defend. And if there had... Well, the order says Zenith has a duty to defend. Correct. Right. So where does it say Zenith must go forth and defend? If we don't defend under that order, Zenith has a duty to defend, we're subject to contempt. How is it any different than motorist? Dan, I'm sorry. How is it any different than our decision in motorist? Your Honor, here, and I don't think... I mean, the Third Circuit has sort of a two-prong analysis, and the second is, you know, first is what does the order say, and the second is what is the practical impact. And the impact is that if we had decided to ignore that order, we would be subject to contempt. In a way that is different than if it were just a declaratory judgment? Well, I think even on a declaratory judgment, Your Honor, the only difference with a declaratory judgment, there are two kinds of declaratory judgment that I'm aware of. One is the insurer asking for a declaration or the insured for something that hasn't yet happened but is justiciable and reasonably likely to happen. Namely, whether or not there's going to be coverage, even, for example, if the insurer's attachment point hasn't been reached yet. Obviously, that's not this kind of situation. The other is when one party files a breach of contract claim, and to be clear, they did have a breach of contract claim. So maybe that's why this is not even a declaratory judgment issue. The MPN, the employer, was not seeking declaratory judgment on the duty to defend. It said, we breached. And on that basis, Judge Beadlestone didn't say, we could have asked for a declaratory judgment because we were not. seeking an order that we didn't owe a duty to defend. And also, if you look at, as my colleague just handed me, Her Honor, Judge Beadlestone's order of July 27, 2021, upon consideration of defendant MPN's motion to enforce the court's March 19, 2021, order in seeking defense fees and costs, it is ordered that the motion is denied without prejudice. In the footnote, which is where the court put its reasoning, it mentions that pursuant to that order, Zenith is required to both provide MPN with a defense in the underlying action and reimburse MPN for defense fees and costs incurred in state litigation. Zenith refuses to comply. There's no question that in response to that order, we would have been subject to contempt if we didn't, when we didn't get a stay from this court, comply. So this was not a declaratory judgment order. Couldn't that motion to enforce the April order and the denial of that motion to enforce be interpreted as her saying, look, it was only a declaration, a declaratory judgment. There was nothing to enforce. That's why I'm denying it. I don't think there's any way to, Your Honor, with all due respect, to read that order without subjecting my client to sanctions and possibly even worse, meaning sanctions of fees and a contempt sanction. And again, to be clear, MPN was not filing a declaratory judgment on the duty to defend. It was on the duty to indemnify, but not on the duty to defend. It said we breached, and in entering the order, the judge was also deciding that issue. May I go on to the merits issue? Members of the panel? Okay. I'm going to skip right to the meat of this. I mean, and to be clear, and I know the panel is aware of this, our arguments go to whether or not a Martin claim is inherently, under Olitski, a claim that triggers our exclusion. But secondly, apart from whether a Martin claim is inherently one that triggers our exclusion for intentional aggravation of an injury by the employer, I want to jump right to the language in the amended complaint, because candidly, it's easier. And I'll tell you why it's easier, because it's hard to imagine a case that comes more squarely within Olitski, which has been approved, as the Court knows, by the Pennsylvania Supreme Court in the Greenfield case. So it's the law of Pennsylvania. But Olitski and Martin. Paragraph 40, AR, that's active radiator. That's the employer. The employer fraudulently concealed Dr. Bondolat's order from Mercer, that's the employee, to deceive Mercer about the lead that was accumulating in Mercer's brain. Now, unlike Greenfield, where somebody can be given heroin and they can die, or they cannot die, there is absolutely no allegation. And to be clear, we're dealing with allegations. I'm not offering an opinion as to whether or not these allegations will be or would be successful. And there is an underlying workers' comp matter, which Zenith is defending, that's been ongoing. But I am dealing here with the allegations, which we're all assuming are true for purposes of this argument. But he says, deceive Mercer about the lead that was accumulating in Mercer's brain. There is no possibility that lead accumulating in Mr. Mercer's brain could have any effect other than aggravating an injury. There is no euphoric drug-induced high, there's no alternative to death, there's no alternative to injury. This case is different than any other case that our adversary has cited where you could say, for example, that the employer's practices in not providing a guard, in not testing more frequently, in not, in one case, in one of the other four cases we cited from another jurisdiction, in not providing a radio that worked for a police officer calling for assistance. All those things involve other conditions of employment, and yet they still were found to meet the substantial certainty test. So you mentioned Greenfield, but didn't Greenfield say that intentional injury exclusions only apply to harm that the insured actually subjectively intended the harm? Actually, what Greenfield said is it cited approvingly and essentially affirmed Olitski. It did not require, and it expressly says this, that only subjective intent as expressed in a pleading has to survive. It said substantial certainty could be a substitute, and it rejected the inferred intent standard, which applies in abuse cases. But it went on to say expressly that the Olitski standard applies, and the Olitski standard has been applied since then. And the second prong of the Olitski standard is what applies the substantial certainty test. But the reason that I'm bringing this to the Court's attention is, first you have paragraph 40. Mercer to deceive Mercer about the lead that was accumulating in his brain. Then you have 47 that says, from November 19, 2016, when Romeo, that was an employee of the employee, threatened to fire Mercer if Mercer's zinc got any higher with no money, to November 17, 2017, the date American Radiator fired Mercer, Mercer continued to aggravate the lead accumulated in Mercer's brain. Again, there is no way of interpreting that other than to say that it was substantially increasing or aggravating an injury. It goes on, though, and it doesn't say that for the purpose of harming. Well, first, for the purpose of harming would be a subjective test, that its intent was to harm. And no, it doesn't, but it does say that it knew that lead was increasing, and under the Olitski test, it's substantially certain that harm was coming from that, because there can't be anything other than harm coming from that. 78 says, AR intentionally and fraudulently concealed Mercer's 216 zinc level, and that lead was accumulating in his brain. How can intentionally and fraudulently concealing his zinc level 78, and that lead was accumulating in Mercer's brain, how can that not lead to substantial certainty and aggravation of brain injury? I guess you could say it was fraudulent, it was reckless, but it was a little short of substantially certain. Except there's no other outcome, Your Honor. I mean, with all due respect, this isn't like the heroine from Greenfield called suicide, ironically, that either the person dies or the person has the outcome she wants. There was no outcome here from exposure of lead to the brain. 91 outcome, 91, AR fraudulently concealed Dr. Bondelake's order from Mercer to deceive Mercer about Mercer's lead poisoning. To deceive Mercer about Mercer's lead poisoning, that's 91. How much closer can you get? I mean, to deceive him about his lead poisoning, 98, from November 19, 2016, when Romeo threatened to fire Mercer if Mercer's zinc got any higher with no money, to November 17, 2017, the date AR fired Mercer, Mercer continued to aggravate the lead accumulation in Mercer's brain while Mercer soldered parts into radiators in AR's assembly plant, 99, the last one here. Mercer's additional 12-month lead exposure after Dr. Bondelake ordered, after his order, it's missing the apostrophe S, aggravated Mercer's initial injury of the lead that accumulated in Mercer's brain between May 24 and May 25, 2017. And November 19, 2016, into permanent brain damage. Okay, thanks. We'll hear your own rebuttal. May it please the Court, my name is Jeffrey Vita from the firm Sachs, Stornberger & Vita, and we represent the Appellee NPN, Inc. I believe the Court would like me to briefly address the jurisdictional issue, please. Very succinctly, Your Honor, Judge Beadlestone's original ruling, which is Document 34, granting in part the motion for partial summary judgment. I believe it was a declaratory judgment order, unlike opposing counsel's position that it wasn't. Our counterclaim was for two counts, a declaratory judgment and breach of contract. So I believe it was a declaratory judgment order. I think that original order was not injunctive in nature, such that it would have been immediately appealable under 28 U.S.C. 1292-A1. I will concede that Judge Beadlestone's subsequent order, which is Document 47, which was in July of 2021, where she clarifies her original order. And in that ruling, in that subsequent ruling, she says that Judge Beadlestone's original ruling was not injunctive in nature, such that it would have been immediately appealable under 28 U.S.C. 1292-A1. I believe that MPN is, Zenith is ordered to reimburse past defense fees and costs and defend going forward. I believe at that point it would likely reach the injunctive standard under Ramara where it would be immediately appealable. How is Zenith is required different than Zenith has a duty to? Why isn't it just another articulation of the earlier declaration? The earlier declaration didn't order MPN to reimburse anything. It simply said granting in part the duty to defend. So I don't think at that point it would meet that injunctive requirement, which would make it immediately appealable. I do think the subsequent order, though, likely did. What was the point of the motion to enforce the earlier order? Because Zenith refused to reimburse defense fees and filed a motion to stay the trial court's order, which we opposed. So we then filed a motion to enforce the order requiring them to defend. And at that point I think the jurisdictional issue had been asserted here at this court and the judge declined. Didn't the March order say Zenith has no duty to defend? No, the March order said Zenith has a duty to defend, Your Honor. There are two different paragraphs. So they have a duty to defend. You move to enforce that order and she denies it. What do you make of that? I think, Your Honor, she denied that because at that point the Third Circuit had indicated that there was a jurisdictional issue and she refrained from ruling. In fact, at the very end of that footnote she says, I will refrain. This court awaits the decision of the Third Circuit before taking any further action. So I believe she decided at that point to refrain from any further conduct. May I move on to the merits? Sure. This is a duty to defend case, plain and simple. Under Pennsylvania law, the duty to defend is extremely broad. And if there's any potential that a claim comes within coverage, Zenith is obligated to defend MPN. In this case, Zenith relies primarily on exclusion C-5 in the policy as the basis for denying defense. C-5 excludes bodily injury intentionally caused or aggravated. Because we're dealing with an exclusion, the burden of proof is squarely on Zenith to establish conclusively that the exclusion applies to the facts alleged in the complaint. Secondly, under Pennsylvania law, unlike the duty to defend, which is construed broadly, exclusions are construed narrowly and strictly against the insurer. In this particular case, Zenith relies on exclusion C-5 and it's referred to as an intentional acts exclusion. And the standard under Pennsylvania law for interpreting intentional acts exclusion was put forth in the Olitski case. And Olitski, there was some discussion of it earlier, Olitski sets forth a standard that says, the actor must intend the subsequent harm in order for the exclusion to apply. It is purely a subjective analysis. That actor intentionally intended to harm someone else. In the underlying amended complaint, there are, as you have probably seen, there are quite a few allegations. That amended complaint, however, does not allege that MPN intended harm to Mercer. There is no allegation in count one that says that, and therefore... It doesn't require a great leap though to conclude that they were substantially certain that such harm would occur, right? Right, the Olitski court addresses that in the sense that you can't infer intent, you can only, under Pennsylvania law, you can only infer intent in sexual abuse of minors. This is not that. And secondly, Olitski clearly says that the standard that would allow an intentional acts exclusion to apply, foreseeability doesn't meet that standard. Recklessness does not meet that standard. So although the Mercers allege a variety of bad conduct, that recklessness and the fact that somebody might say, well, it's foreseeable that if you withhold information from someone, he could be subsequently injured, foreseeability does not meet the Olitski standard. What about substantial certainty that it will result? Olitski says substantial certainty, the same response, Your Honor, the fact that something might be foreseeable doesn't make it substantially certain that it will occur. Right, but I mean, there is some space between intent and substantial certainty, right? And Olitski allows for substantial certainty to, what is your understanding of whether substantial certainty counts? Olitski says it does count, but it has to be subjective, first of all. And there's no allegation that MPN intended to harm Mercer. Right, but there are many allegations that MPN knew about the lead that, and, you know, there's no allegation that MPN intended to harm Mercer. And perhaps, would you agree that there are allegations that it intended to mislead Mr. Mercer? Yes, Your Honor, and that, because I think the plaintiff was trying to plead a Martin claim. Which, by the way, the Martin claim, we should be clear on the Martin claim, it's a fraudulent misrepresentation claim under Pennsylvania law.  It requires a misrepresentation, a fraudulent utterance of that misrepresentation, an intention by the maker that the recipient will be induced to act, reliance by the recipient, and then damages which approximately result from that. The Martin case does not require any intent to harm. So, again, under Olitski, there's no allegation that MPN intended harm to Mr. Mercer. And foreseeability doesn't meet the standard under Pennsylvania law. Would you say that Greenfield exactly parrots Olitski, or did Greenfield narrow Olitski in any way? Greenfield, I would say it mirrors Olitski, but the Greenfield case is all about, that's the sale of heroin to the individual who ultimately overdosed. Greenfield talks about inferred intent can't be applied, because the lower court in Greenfield applied inferred intent. And the Greenfield court said, no, inferred intent can only be applied in sexual abuse of minor cases. What Greenfield then did, though, is it said they applied public policy in that case, and they said that because the sale of illegal drugs is prohibited by Pennsylvania law, that's a criminal act. And therefore, Greenfield said, based on a violation of a criminal statute, that there was no coverage for that. And that's a public policy issue. So in the state of Pennsylvania, public policy would prevent insurance coverage in two instances, criminal acts, which this is not, and certain intentional torts. However, those intentional torts apply the Olitski standard, which we've talked about, which is, in order for the exclusion to apply, the actor must intend that harm to the individual. And that is not alleged in count one. Okay, thank you. Unless you have something more. No, I think we are governed by the broad principles of the duty to defend is very broad here. And courts adhere to that to give the benefit of coverage to the insured. And I don't think Zenith met the burden of proof to show that exclusion C-5 applies, because there's no allegation of intent. And there's no allegation of intentional injury. I will comment briefly on, Zenith also raises C-4 as a basis to exclude coverage, and C-4 excludes coverage for any obligation imposed by workers' comp or similar law. Clearly here, there's two things. The Mercers have, Mr. Mercer has a separate workers' comp proceeding. So clearly, this tort claim is something other than workers' comp, so I don't see how C-4 could be applied. And Zenith even says that exclusion C-4, this workers' comp exclusion, does not apply to count one, which is the count we've been talking about, which is the plaintiff's attempt to plead a Martin claim. So I don't think C-4 applies at all to these facts. Thank you. On the jurisdiction issue, Your Honor, it's Ron Schiller again. Defendant MPN filed a motion to enforce the Court's March 19, 2021, order and wrote, MPN is entitled to a defense, and MPN is entitled to a defense. It then went on to say that the Court should sanction Zenith for being, quote, in blatant disregard of the Court's order, and MPN respectfully requests that the Zenith be compelled to immediately comply. On the merits, Your Honor, two things on the pleadings dealing with Mercer. One is, this is Pennsylvania pleading, and one of the things that MPN argued is they argued from Rule 4 and the federal rules of pleading. Pennsylvania, as Your Honors all know, is fact pleading. This is Pennsylvania pleading. And to be clear, these were not alternative counts. These were not, yes, you pled this, but if that's not true, then we have a lower standard to plead at this. And Count 3 begins with, in 138, the foregoing statements are incorporated here, and as those set forth verbatim. 143 is the one that sums up everything I was reading to Your Honors before. From November 2, 2016, the date of Dr. Bondolak's order, to November 17, 2017, the date that Dr. Bondolak's order was issued. The employer fired Mercer. The employer was substantially certain that Mr. Mercer would suffer harmful contacts with lead and cadmium that would aggravate the lead accumulation in Mercer's brain to permanent irreversible brain damage. How do you ignore that? Now, the district court said, well, it's only in Count 3, except Count 3 relied on the facts before, and that paragraph is completely 100% consistent with the paragraphs before. In Elitsky, the court stated, we adopt the Hassinger Court's definition of intent, even though that case did not deal with the interpretation of a contractual provision. So what Elitsky did was extended what was really restatement second of torts 8A, which has the substantial certainty prong, and the other courts that deal with this. The reason they have the same language is 8A of the restatement, it extended it to contracts, and there are some states that haven't done that. Elitsky did, and that has never been cut back. The court went on to say, however, we feel that an intended harm should be determinist with public policy. So I'm glad public policy came up, and I'm also glad that both parties agreed that Greenfield did not cut back on Elitsky. It didn't. But the public policy of Pennsylvania, for example, was set forth, and I'm running out of time, but in Cigna versus executive risk, where in addition to discussing a deliberate or fraudulent act exclusion, the Superior Court panel in 2015, I think it was, yes, said, moreover, we reject appellant with Cigna. The insurer was executive risk or choked. The insurer was not exempted from the liability of intentional acts would not be precluded by public policy in Pennsylvania. Pennsylvania case law is unequivocal that reimbursement from insurance for intentional acts is against the public policy of the Commonwealth, and then it goes on. Cigna tried to take that to the Pennsylvania Supreme Court, which denied review. Pennsylvania law remains clear that public policy is an alternative ground, that public policy precludes insolvency. In certain narrow circumstances, Martin is a narrow circumstance, and to be clear, the elements of a fraudulent misrepresentation claim that counsel was just leading to you, it's a small part of Martin. That's the little end part of Martin, where they just talk about the elements of pleading. The rest of Martin is about what you have to plead and prove in order to get around the public policy of the Workers' Comp Act, and the stated language of the act to plead a Martin claim, and that relates to the fact that it's a small part of Martin. It requires active concealment, and they italicized the word active in Martin, and that's exactly what this complaint in Mercer alleged.